Good morning, your honors. May it please the court, John Drake, on behalf of the appellant, Daniel Chavez. Seated with me at council table is my co-counsel, Kendra Nichol-Ngwe. I'm going to attempt to reserve about five minutes for rebuttal, and I will monitor my own time. Your honors, the district court dismissed this case sua sponte in the face of 30 years of precedent holding that a probationer cannot be re-imprisoned for invoking the Fifth Amendment. This court need look no further than Minnesota v. Murphy and Judge McEwen's opinion in United States v. Antelope to confirm that reversal is required. The state of Oregon and Klamath County labor to defend the dismissal, but they've ignored the elephant in the room, that being that Mr. Chavez was compelled to admit guilt while his appeal was pending. The county further suggests that its admit-or-go-to-jail approach to treatment is perfectly constitutional. This is a sure sign that the county will continue to violate the rights of offenders with pending appeals. Counsel, can you help me with a procedural issue? As I understand it, neither of the individuals have ever been served with the summons and complaint in this action, right? That's correct. And the county is participating as amici, so there's basically, I guess, nobody appearing on behalf of the individual defendant. That's correct, Your Honor. I would point out that there's an Oregon statute that specifically requires Klamath County to appear and defend. Well, is the county named as a – I didn't think it was – as a separate defendant? No, they are not, but they are required to defend and indemnify anyone sued in their individual capacity. I understand, but I assume the reason that they are appearing as amici is because there are not individual defendant parties yet. That's correct, Judge. They are not parties to the case. They have not been made parties. Go ahead. No, go ahead. So what you're – I take it the thrust of your case at this stage is that it shouldn't have been thrown out on the judge's screening on the Prison Litigation Reform Act. Yes, Your Honor. The thrust is really twofold. First, that the case should not have been dismissed at the screening stage, but we're also stuck with the ruling on the merits. The case was dismissed with prejudice, so we need to address that as well. I'm still hung up a little bit on the procedural question here. What started this was the district court issued an order to show cause why the case should not be dismissed for failure to prosecute. Yes, Your Honor. But I didn't see any indication in the court's order that that was the basis for the court's ruling. Instead, it looked to me like the district court engaged in 1915 screening and assessed as best it could the merits of the argument and decided that the qualified immunity would apply, and therefore the case wasn't going anywhere. Is that improper under 1915? First of all, you're correct, Your Honor, in that it was dismissed for failure to state a claim as opposed to failure to prosecute. But the answer is no, it's not proper to dismiss a case at the screening stage on qualified immunity grounds. Well, that's a question. It's an open question, yes. So it says immunity, and your view is that it would need to say qualified immunity in order to dismiss at that stage. Your Honor, our position is that the word immunity, the plain language of the statute, refers to absolute immunity, which can be easily determined from the face of the complaint, for example. Well, isn't it more common that what we talk about is official immunity, and there's absolute immunity, and there's qualified immunity, and the statute doesn't make a distinction, right? It could be argued, Your Honor, that the statute applies all forms of immunity, and it perhaps is ambiguous in that regard. And if the court were to conclude that the statute is ambiguous, it would, of course, result to rules of construction, the first being that you can't construe the statute in a way that would lead to an absurd result. I'm not sure it would be absurd, though. I suspect you know this, that the majority of lawsuits that are screened out under 1915 are qualified immunity suits. They're usually civil rights actions by prisoners seeking to hold some public official, often correctional officers liable for violation of their civil rights. So I think it's going to come as a huge surprise to the district judges in this circuit if we publish an opinion that says, no, that reference in the statute means only absolute immunity. And I'm not sure, other than maybe judges, whether there are very many other examples, like maybe 11th immunity of states, but beyond that, it's a pretty narrow. Parole boards. Yeah, parole boards, maybe. But there's a limited number of absolute immunity cases. I agree. And, yes, the majority of cases in which the informa papra statute applies are cases in which qualified immunity might be available as an affirmative defense. But I guess you're asking us to interpret congressional intent in enacting Section 1915 as if Congress wasn't aware that the typical prisoner pro se civil rights case is going to be seeking damages against individuals who either have qualified immunity or they don't. Yes, Your Honor. Even if the individual happens to be a judge in that particular case. And I have two points in response. The first is that when we're looking at congressional intent, the intent of the statute, with respect to this particular language, is to screen out complaints that are destined to fail, that wouldn't be worth anyone's time to serve on the defendants at the court's expense. And that's what the court thought it was doing here, did it not? I mean, it looks to me like that's what Judge Panner was doing. I agree. That's what Judge Panner purported to do, yes. Maybe he was wrong, but it seemed to me that, in essence, 1915 is an exception to the normal rule under 12b-6 in other civil cases that we only dismiss if there is standards are met. Yes. And perhaps I need to back up. I think the starting point for this analysis is Gomez v. Toledo and Crawford L. v. Britain. Both of those cases squarely hold that the burden of pleading qualified immunity, which, of course, is an affirmative defense, rests with the defendant. The plaintiff is not required to anticipate what affirmative defense is. No, but that's a 1980 case on pleading that precedes the statute in issue. So let me just give you an example. I file a lawsuit that says that I have a constitutional right to paint all the city streets red. So the district court takes a look at it, and I start doing that, and the city says, hey, you can't do that. So we've got some state action there, and I have an individual person that tells me I can't do that, and maybe they want to give me a citation or whatever. So the judge looks at that and says, look, there's no established constitutional right anywhere in the statutes that would say you have a constitutional right to paint the city streets red. So even if you do have a right, it's certainly not established, and under the way we do qualified immunity, that's a suit that ought not go forward. That's not a lot different than the judge looking under a cause of action and saying, well, there's five points you need to this certain cause of action, and you've only got three, and so I'm going to throw it out. So what's the difference in terms of what's being done? It's not a question of the plaintiff having to plead around anything. It's a legal question. Precisely, Your Honor. It is a legal question. In your example, it's relatively clear-cut, and that's really the exception to the rule. Qualified immunity, as this court knows, is very complicated analysis. You're performing a legal analysis of what the state of the case law was at the time that the right was alleged to have been committed, and as evidenced by this case, this can be misinterpreted. Well, maybe the district judge will be wrong, and then what's the remedy? Well, the remedy is why we're here today, Your Honor. Exactly. So it's not like that it's going to go into the wastebasket necessarily. You have the remedy if the district court is wrong that you can appeal, but the district court is needing to make, it's not a lot different to make a constitutional judgment of whether or not a law is clearly established to whether certain elements of the claim are there or whether you missed an element of a constitutional claim or you forgot to allege something. So what's the difference? Because the district court is making a legal judgment right or wrong, right? Yes, Your Honor, and I think that the critical point here is that we're talking about screening before, to Judge Tallman's point, before the defendants have been made parties to the case. We're certainly not saying that the district court could not sui sponte raise qualified immunity after the defendants have been served. That would be perfectly acceptable. We're talking about this narrow, very beginning of the case that a case is being dismissed. In some respects, it's akin to what we do at the certificate of appealability stage when a habeas petitioner comes to us and says, I want permission to file a habeas action. We have to make a preliminary assessment of the nature of the claim based on whatever is before us in deciding whether jurists of reason might agree that there's a case here in order to, you know, sufficient to encourage it to proceed. And that's essentially what the district courts are asked to do under 1915, are they not? I agree, Your Honor. I think it's a little bit lower standard. Again, we're talking about screening. This is a very blunt object, just trying to weed out the cases that are destined to fail. That are clearly going nowhere. They're destined to fail, and there might be an... But you know, one question I have is that immunity, whether it's absolute or qualified, is not a normal defense. It's basically an immunity from suit, correct? That's correct. And so whether it's absolute or qualified, it doesn't really stand on a different footing. I agree, Your Honor, in terms of the fact that both are affirmative defenses, but qualified immunity is a very specialized form of immunity that relies on, as I said, the state of the case law. And again, we're not saying that this can't be raised in a 12b6 motion. It certainly can, and the district court can certainly address it sua sponte, even in the absence of such a motion. But it has to wait until after the defendants have been served, and give the plaintiff an opportunity to at least respond. So what if the district court, instead of dismissing with prejudice, had dismissed with a need to amend at this stage of the proceeding and set out what the elements are of a qualified immunity defense? Is there anything more that the plaintiff could have alleged that might have circumvented the ruling? Well, Your Honor, our position is that the complaint stands on its own, that it's been satisfied without any additional facts required. But yes, the district court certainly could have given an opportunity to amend, and that would have been appropriate, at least to have a notice, an opportunity to respond to the fact that the court is contemplating dismissing. So if the court had done that, what more, if anything, could the plaintiff have alleged that would have potentially survived this screening? Well, Your Honor, he could have listed a simple citation to United States v. Antelope and Minnesota v. Murphy. I mean, that's, I think, plenty to satisfy the screening portion and to survive a motion to dismiss. Counsel, do you agree with the district court's characterization of your client's response to the order to show cause as treating it as an amended complaint? No, I do not, Your Honor. So you're relying entirely on the original complaint that he filed? The original complaint and the addendum there, too, yes. And to the extent the court wants to consider the response to the order to show cause for purposes of facts that might be alleged with leave to amend, that's perfectly appropriate as well. I'm not sure I understand the import of the answer. You can consider both, but we're relying on the original complaint. Yes, Your Honor. The original complaint and the addendum. I mean, part of the problem, as you know, is that if you treat it as an amended complaint, then I guess it's the probation or community corrections officer who falls out of the case because she's not listed as a defendant in the caption. In theory, Your Honor. However, the district court dismissed the claims against the probation officer, Ms. Moore, on the merits with prejudice. Yes, but I thought it was in the alternative. In other words, at first I find she's not listed, therefore you don't have a claim, but even if she is, then she's immune. Well, that's correct, but I think if the shoe were on the other foot and Mr. Chavez were to file a new claim against Ms. Moore, we'd certainly have a res judicata defense being raised. Well, I guess the concern I have is that the case has now been pending for, what, five years? And she's never been served. Yes, Your Honor, through no fault of Mr. Chavez's. It was the district court's. I mean, Mr. Chavez did file some material with the district court clerk indicating that he'd completed service, but it sounds to me like that actually wasn't true. I think that it might not have been proper service, Your Honor. However, it's the district court's responsibility under Section 1915d to ensure that service is properly completed through the U.S. Marshals Service. What did he do with his affirmative representation that service had been completed? I mean, even if he doesn't know that it's not effective under the law, can the district court consider that? Perhaps, Your Honor, but the district court clearly indicated on a number of occasions that the complaint had not properly been served and indicated that it was Mr. Chavez's responsibility to do so. Well, I'm not so sure. I mean, the order to show cause basically was, look, this case has been pending on my docket for almost two years. Where are we? And frankly, your client's response was not responsive to the district court's order to show cause. Instead, what he got was something. I'm not sure. You don't want it characterized, as the district court did, as an amended complaint, but that's one way you could look at it. It could be construed that way, Your Honor, but construing it in that fashion is contrary to the rules that apply to, excuse me, to pro se complaints that need to be construed liberally and with the benefit of every doubt given to the plaintiff. Thank you. Good morning, Your Honor. I'm Gerald Warren, amicus brief on behalf of Klamath County. And as you indicated, Judge Tallman, if that second filing is construed as an amended complaint, which we believe the district court judge, Judge Panner, reasonably did construe it, then there's no claim against Ms. Moore. The second claim. If it's not an amended complaint, what is it? It's not responsive to the order to show cause. I agree, Your Honor. It doesn't address the two-year delay in the prosecution of the lawsuit. I agree, Your Honor. That's the only reasonable interpretation is that it says tort claim with money damages, names a new party, which is often what an amended complaint will do, and then it does throw in three, he says, grounds, but I think there are three claims and he names a new one against the Board of Parole negligence, I think he alleges in his first grounds, and then he alleges a claim against, I guess, the state court for not granting his stays, and then finally the Fifth Amendment one that he alleges. So to answer a couple of the questions. You know, I mean, in fairness to the pro se plaintiff, it's neither here nor there exactly what that piece of paper is, and it doesn't seem that there's anywhere that he's affirmatively abandoned Moore as a party. It's confusing because that's not what the, if it's non-responsive to what the district court said, then it's non-responsive, but it's not necessarily an amended complaint. Well, Your Honor, except that it does add a new party and new claims, which is the description generally of an amended complaint. It isn't responsive, but that's often how people will respond to show cause orders, is to file an amended complaint or pleading. And believe that they've got their first complaint plus this piece of paper, and now we've got the complaint. Except that Mr. Chavez in his filing says, my prior filing may be considered as an exhibit or something of evidence of abuse or something to that effect, as if he's abandoning those, but here's additional evidence to support the current claims I'm bringing. And that's the difference, I think, with his subsequent filing. But neither individual was served. There's no evidence in the record that they've been served, and that's originally I agree with Judge Tolman that there is an obligation under 1915 if it's an informa par paris filing, and it was accepted that the court has to assist in that, but I don't think the duty extends to when you make representations, as Mr. Chavez did to the court, that these parties have been served, then the district court has to go beyond that. But I thought the representation of service was in the initial complaint. It was a letter, Your Honor. So how could the plaintiff have actually affected service at the filing of the complaint if there's no indication in the docket that a summons was ever issued? Well, I agree that that might require the district court judge to inquire further, but I believe in one of the other filings he indicated a second time that they had been served, and it was a different date. But you're right, and that's evidence that they never had been properly served because it was in his letter to the court giving this additional filing. Counsel, was Moore a county employee, or is she a state employee? She was a county employee, former county employee now, but she was a county employee probation officer, Your Honor. But she would be responsible if an individual is released from the custody of the Oregon prison system for supervising him if he's paroled to Klamath County? I think the state is going to address that, whether there's PPS. He was post-prison supervision, I believe. I'm just trying to understand the Oregon system because in Washington we have a different system. We have community corrections officers who are actually, I think, state employees. And I should have said we're going to split our time roughly, but Mr. Payne will be able to address that. We'll talk with him. So you represent Moore as a county employee? I would represent her if she was ever properly served. If you were a party, I understand. If you were a party, you would represent her. She would have to tender the defense, Your Honor. Mr. Drake mentioned a statute. That statute is triggered when the service is on the person, and then they tender it for the defense. So what do you represent then today? I represent Klamath County in the interest of its former employee and not being brought back into this lawsuit. Has she tendered the defense to the county? No, Your Honor. The Ninth Circuit asked us to appear as an employee. I understand, but I'm just trying to understand your legal status. I don't represent Ms. Moore today because she has not been properly served and not tendered that to the county for a defense. Judge Gleason, you mentioned having a factual void. You know, what else could they plead? And there wasn't anything else, and that's why the judge could go to the qualified immunity question. They don't offer any additional facts in their brief or say this would also help overcome the qualified immunity defense. Do you have any cases or authority that we should look to that would construe the term immunity from the statute as both absolute and qualified? I don't, Your Honor, but I think that using the term immunity would be broad enough just by its common sense usage. As the court indicated, absolute immunity would be pretty narrow, and so the use of immunity does suggest that the judge screen for all forms of immunity when a person is asking for monetary relief, and that's what Judge Panner did in this case. So if there aren't any additional questions for me on behalf of the county, I'll turn it over to the state. All right. Thank you, ma'am. May it please the court. Jeff Payne on behalf of the Amica State of Oregon, and as Mr. Warren stated, I'm going to be talking about the issues related to the Board of Parole and Post-Prison Supervision, specifically the plaintiff's challenge to ORS 1441024BF, the claim that as applied to him it violated his First Amendment rights. I do want to point out one thing, that in his reply brief, the plaintiff has explicitly disclaimed an argument that this court should address the question of whether this statute is unconstitutional as applied. That's in the reply brief at 15. The only question is whether the district court, applying a liberal construction to the pleading, should have divined a claim that ORS 1441024 violated his First Amendment rights as applied to him. There's two problems with that argument. First, for an as applied challenge, the plaintiff has an obligation to identify the statute in question and explain why on the facts of this case it is unconstitutional. And there's nothing in the pleadings here that cite this statute in any form whatsoever. The court does not have an obligation to go searching for possible statutes, constitutional provisions or whatever that, based on the alleged facts, might have been violated. Doing that kind of searching on behalf of a plaintiff is going far beyond the liberal construction rule and it's turning into advocating for the plaintiff. So that's the first reason this claim should not be, it's not before this court, it should not be before the district court if this court were to remand. The second problem is, even liberally construed, plaintiff's complaint fails to state a plausible claim that his sanction was a result of an application of ORS 1441024. In the record of 55, it shows that plaintiff was both on probation and post-prison supervision. He was convicted of two counts of sex abuse and the record shows that one of them, the sentencing court imposed probation and the other one, the Board of Parole imposed prison supervision, apparently imposed some post-prison supervision. And I want to address very briefly your question about Oregon's rather arcane sentencing laws. I wasn't making any editorial comment. I was just trying to understand it. Well, you and many of us are. Since November 1, 1989, sentences in Oregon consist of a determinate period of time in prison and a determinate period of post-prison supervision. Parole does not exist under Oregon sentencing anymore, with the exception of life sentences, usually for murder or aggravated murder. If someone has a life sentence and they are released early, then they are on parole. But as a matter of nomenclature here, Mr. Chavez was never on parole. That's not really dispositive in this case, but there is a lot of references to parole supervisor. And you asked about the function of more in this case. We can't tell from the record whether she was supervising both probation and post-prison supervision. Under Oregon's system, it varies from county to county. Sometimes one person does both. Sometimes two people do both. It depends on the crimes and the sentences. And so on this record, we can't tell exactly what her function was. We don't have the judgment here, right? So we don't even know what the original sentence was, do we? No. Well, liberally constrained to pleadings, we know that he was. . . He spent a month in jail. Whose jail? That's a good question. The Klamath County Jail? I doubt that he went to the Oregon Penitentiary for a month. Was this one of those situations where he was admitted to probation, but as a condition of probation he had to serve 30 days in the county jail before he was. . . That goes to my next part of the reason why liberally constraining this complaint. We still don't get to the unconstitutionality of RS-144-102. We can't tell, as a matter of fact, what the June 2010 sanction was for. As I noted, we have both PPS and parole here, but there's nothing in the record anywhere that says when supposedly sex therapist Robinson took him to jail that that was for post-prison supervision or probation violation. Without something in the record showing that that was specifically for a post-prison supervision violation, we can't get to the unconstitutionality of RS-144. Can't we reasonably infer from his statement of the facts that the reason he had to go see Mr. Robinson was because the statute requires completion of a sex offender. . . The record does show that the trial court, the county court, the circuit court, on probation sentenced him to undergo sex offender therapy, and under RS-144-102, the Board of Parole and Post-Prison Supervision has to impose that when it releases him to post-prison supervision. So apparently, reading this liberally construed, he had two requirements from both. . . I guess what's confusing to me is how would the Oregon Parole Board have any authority over Chavez if he hadn't actually served time in the Oregon prison system? I believe the record shows he did, yes. He did both county jail time and prison time? You're talking about the sentence, not the sanction for not completing the sex offender treatment. Am I correct? No. Maybe I'm not making my questions very clear. But you said he spent a month in jail, and I assume that's the Klamath County jail. But what we don't know is what happened before that. In other words, had he been discharged from serving another sentence of imprisonment? Yes. On the one count, he was sentenced. If we read the complaint liberally, he did spend some time in the Oregon State Penitentiary. I mentioned this in footnote 2 in my brief. It shows that he was released from the Department of Corrections, and he submitted a proposed plan of reentry. This is in the record of 59. So we do know that he did spend some time in state prison. We also know that the Klamath County Court ordered him to serve probation. There's nothing in the record that he served any jail time for that sentence, for that conviction. So we have the two convictions, count 1 and count 3. On count 1, he got probation. On count 3, he got prison time and post-prison supervision. I thought we had two separate female victims, 11 and 12 or something. Your Honor, I don't remember. I'm looking at the record. I guess what I'm misunderstanding is how are we getting to three counts. I thought we were getting to two. He was convicted on two counts. Right. Okay. And you're saying he may have been admitted to probation and perhaps given a short county jail sentence on 1 and then sentenced to prison on 2? On count 1, he got probation. No jail time as far as the record shows. On count 3, he got prison time and post-prison supervision. So when he lands... Back in Klamath County, he had been released from the Department of Corrections. Right. And at that point was when he went to see therapist Robinson. Right. And when he refused to do the treatment, therapist Robinson, someone jailed him for 30 days. And that's the sanction that we're dealing with here. Right. And my point is, before I run out of time here, that we can't tell that that sanction was a result of a violation of post-prison supervision or the probation on the other count. Would it make any... One of the problems with this argument is it tells you why you shouldn't dismiss this. I mean, if you read it liberally, he's stating he has a claim. I don't know if he has a claim. But if you go down the route you're going down, which seems much more problematic, he has the gist of it here. He says he was... He says a claim against these individuals for giving him, you know, basically revoking his right. So I'm just having trouble with your argument, to be honest. Okay. I mean, it's an argument that may well be correct in the end, but on a prisoner complaint. And he's got, you know, his story here, which maybe without the citation to the statute number, that tells you what happened. So I'm just having some trouble understanding your argument. Maybe you can help me out. Sure. I see I'm out of time. If I can answer the question here. Well, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. And here the essential element that's missing is that that June 2010 sanction was a result of a violation of the post-prison supervision that was imposed under R.S. 144-1024. So I guess if the case were to go back, and I'm not, like Judge McEwen, I don't know, but what would preclude plaintiffs from amending the complaint to more clearly state a cause of action alleging a constitutional violation with respect to the statute? That would be at the discretion of the district court, whether it wants to allow an amended complaint. So theoretically, is it futile to preclude amendment or to dismiss on a screening basis? Well, I think given the procedural posture of this, that it had been languishing for so long that he had been given opportunities to respond to this, again, that goes to the discretion of the court. And clearly Judge Panner was not feeling too patient about the fact that he had not responded to this and had not moved on the case at all for over two years. So I think that... But the district court's order is just a standard, what I call a docket-clearing order. No offense, Judge Gleason, but periodically judges look at their docket and they see, well, I've got this case here and nothing's happened in two years, and they issue an order to the plaintiff saying, you know, show cause, if any, why I shouldn't just dismiss this case for failure to prosecute. But I want to emphasize that my argument here is very limited, that they are trying to raise on appeal this First Amendment claim, and the question is whether that can be defined. I understand your argument, but would you agree that it's perhaps possible that the complaint could be amended to answer the question here and to tie the conduct that occurred in June to a violation of post-prison supervision? I think a complaint can always be amended when it's gotten up to this point. We've heard arguments on both sides. Whether it should or shouldn't, but what you're really just saying is, like, he's got it, everything there, but he's missing a statement as to the causal link. That's what's missing in your view? Yeah, that there's a necessary fact. And also, too, again, going back to my first point, the district court is not under some obligation to go looking through all of the Oregon statutes and say, gee, there must be something in here that will fit on these facts that I can find a claim for this fellow. I mean, that goes into advocacy on behalf of the plaintiff rather than merely liberal construction. So I stay aware of my time. Unless the court has further questions, thank you. Thank you. We took some extra time, so I'd like to give you two minutes for rebuttal, please. Thank you, Your Honor. I'll be brief. The court is asking all the right questions. You know, was this probation? Was this post-prison supervision? What about the statute? How does it all apply? And, Judge McKeon, to your point, this is what discovery is for. This is why cases shouldn't be dismissed at the earliest possible stage. He has plausibly alleged that he was on probation and he had his probation revoked. And, Judge Tallman, in answer to your question, the judgment is not in the record. I have a copy. I'd be happy to submit it. The criminal judgment? Yes. But you have it? I do have a copy, Your Honor. It's not in the record. Does it enlighten us at all as to the conundrum that counsel for the state? Yes, it does. Well, I'm all ears. Okay. Go ahead and tell us. Then we'll decide whether to take judicial notice of it. But tell us about it. Well, the judgment itself is not in the record. But it is actually referenced on page 11 of the record, which is the first page of his appellate attorney's motion to stay the condition of probation. And it says in the background section, second sentence, the court placed defendant on 60 months probation. On count one, the judgment includes a condition that he, quote, So that's a probation condition imposed by the Klamath County Circuit Court? Yes, Your Honor. And then did the Oregon Parole Board impose a similar requirement with regard to post-prison supervision? That I don't know, and we'd need to take discovery to answer that question. So what's the claim against the parole board? Right. And why isn't it protected by qualified or absolute immunity under the 11th Amendment? It probably is, Your Honor. So if we leave the parole board aside, I guess the next question would be, if we read this liberally to construe a claim arising out of conduct by Mr. Robinson and Ms. Moore, and we assume that they're both acting under color of state law, and then you get to the next point, which is, was the law clearly established that someone who's been convicted but whose conviction is not yet final, was the law clearly established that that individual is covered by Minnesota v. Murphy? Why couldn't the district court answer that question? It could answer that question, but it would be preferable to wait until after the defense has been raised and fully briefed by both the plaintiff and the defendants, and then at that point the court can embark on an extension. But if that's the rule we're going to impose, then a district court could never screen out under the Prison Litigation and Reform Act in 1915 a frivolous civil rights claim that clearly would trigger qualified immunity. I disagree, Your Honor, for two reasons. First being that the statute specifically references a frivolous complaint as one that can be dismissed right away. We're not dealing with a frivolous complaint here. But the second point, and to Judge McHugh's point earlier... So is your answer yes, you can still screen out under 1915 if the district court thinks that qualified immunity would attach? Yes. Or no, in no case? In no case until the defendants have been served. That would completely gut 1915. That can't be what Congress intends. Where do you get the service requirement? It's tied to a notice principle. The plaintiff needs to have an opportunity to respond to the court's contemplated action. Again, we're talking about dismissal on the merits with prejudice. It doesn't matter whether the people are served or not. Let's just say they're served. Okay, that's a piece of paper in the file. That doesn't actually change the calculus of the district court making a legal judgment. At first I heard your argument to say qualified immunity can't be on the table until the individual defendants show up and raise their hand. My earlier question to you was if the judge has the power to look at qualified immunity, why in this case couldn't he move through all the steps, assume them all in favor of Mr. Chavez, and then come to the ultimate legal question as to whether it's clearly established law with respect to a convicted defendant pending appeal in his situation? With respect to the last part of your question, the answer is that it's such a complicated analysis. It's prone to mistakes as evidenced by the decision here. We're looking de novo at that aspect of it. We've got your briefing, and we've got a briefing from the amicus, and we have our research. I don't see how any court's going to be in any better situation to figure out the answer to that question than we are. Your Honor, we're asking this court to adopt a bright-line rule. Don't address qualified immunity prior to service at the screening stage. However, if the court is uncomfortable drawing that bright line— This is it? Well, it's certainly a good example, Judge. A soon-to-be-published decision in a federal reporter. Gomez v. Toledo and Crawford L. v. Britton are the clearest cases, and we're talking about turning the rule in those cases literally on its head. So if the court is not willing to adopt a bright-line rule, perhaps a more workable rule is that the qualified immunity defense must be obvious from the face of the complaint, as it would be in Judge McEwen's example of painting the road red. That's going to be a very rare case indeed, and certainly not this case. So we would ask that the district court's judgment be reversed and the case be remanded for service on the defendants pursuant to 1915. Before you sit down, I would like to see that Klamath County judgment. Is there any objection by the two amici? Okay. You can just file it. Yes, Your Honor. Thank you very much. Thank everyone for their argument this morning. A very interesting case. This is also a case in which we have pro bono counsel, so I would like to thank you and your colleague for taking on the briefing and the argument in this matter. As you know, it's much easier for the court to deal with a fully briefed and a well-briefed case, and I think it's actually always better for the other side as well so that we are not all left to divine what may or may not have been said. So thank you on behalf of the court for your service. And with that, we're adjourned for the morning.
judges: McKeown, Tallman, Gleason